UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA, | : | |
| --- | --- | --- |
| | : | Case No. 23-CR-79 (RBW) |
| v. | : | |
| | : | |
| JONATHAN BROWN, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S PROFFER OF PROOF
## IN SUPPORT OF DEFENDANT'S PLEA OF GUILTY

United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits the following Proffer of Proof in Support of a Plea of Guilty by the defendant to Counts One and Two of the Information charging (Count One) conspiracy to distribute and possess with the intent to distribute a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C), and (Count Two) voluntary manslaughter while armed, in violation of 22 D.C. Code §§ 2105, 4502.

The penalty for Count One is:

(A)   A term of imprisonment of not more than 20 years;

(B)   a fine not to exceed $1,000,000;

(C)   a term of supervised release of at least 3 years, after any period of incarceration; and

(D)   a special assessment of $100.

The United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of imprisonment and any term of supervised release and/or probation.

1

The penalty for Count Two is:

(A) a mandatory minimum penalty of 5 years imprisonment and a maximum penalty of 30 years imprisonment;

(B) a $250,000 fine;

(C) a term of supervised release of not less than 5 years after any term of imprisonment;

(D) and a VVCA assessment of at least $100

II.  <u>Elements of the Offenses</u>

The essential elements of the offense of conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C), each of which the Government must prove beyond a reasonable doubt to sustain a conviction, are:

(1) That an agreement existed between two or more persons to commit the crimes of distribution and possession with the intent to distribute a controlled substance, that is, a mixture and substance containing a detectable amount of cocaine base;

(2) That the Defendant intentionally joined in that illegal agreement.

The offense of violating 21 U.S.C. § 846, by conspiring to violate federal narcotics laws, does not include as an element, the commission of an overt act in furtherance of the conspiracy. *United States v. Pumphrey*, 831 F.2d 307, 308-309 (D.C. Cir. 1987).

Count One of the Information charges that the Defendant conspired to distribute and possess with the intent to distribute a mixture and substance containing a detectable amount of cocaine base. The essential elements of the offense of distribution of a controlled substance are:

(1) That the Defendant distributed a controlled substance. Distribute means to transfer or attempt to transfer to another person. The Government need not prove that the Defendant received or expected to receive anything of value in return;

(2) That the Defendant distributed the controlled substance knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally, or inadvertently.

(3) That the controlled substance was a mixture and substance containing cocaine base.

The essential elements of the offense of possession with intent to distribute a mixture and substance containing a detectable amount of cocaine base are:

(1) That the Defendant possessed a controlled substance;

(2) That the Defendant did so knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently; and

(3) That when the Defendant possessed the controlled substance he had the specific intent to distribute it. Distribute means to transfer or attempt to transfer to another person.

(4) That the controlled substance was a mixture and substance containing cocaine base.

The essential elements of Count Two are:

(1) The Defendant caused the death of Kervin Sanchez;

(2) At the time he did so, he intended to kill or seriously injure another person, or acted in conscious disregard of an extreme risk of death or serious bodily injury to another person;

(3) He did not act in lawful self-defense; and

(4) At the time he committed the offense, he was armed with a firearm.

### *Factual Proffer*

The following proffer of the government's evidence is intended only to provide the Court with enough evidence to satisfy the mandate of Rule 11(b)(3) of the Federal Rules of Criminal Procedure. This proffer is not intended to be a disclosure of all the evidence available to the United States nor, to the extent it makes representations concerning anything the defendant said, is it a recitation of all that defendant said or did.

Had this matter gone to trial, the government's evidence would have shown, beyond a reasonable doubt, the following:

### Count One

In or around late 2021, members of the Metropolitan Police Department ("MPD"), in conjunction with the Federal Bureau of Investigation ("FBI") (collectively "Law Enforcement") began investigating violent crime and drug trafficking activities occurring in or around the corner of 7th Street and O Street in Northwest, Washington, D.C.

Law enforcement quickly discovered that a specific group of individuals associated together in this area on a regular basis, including the Defendant and other defendants named in Case No. 22-CR-164 (RBW), with the shared purpose of selling controlled substances in the District of Columbia from on or about July 1, 2021, through at least May 25, 2022.

Law enforcement identified several residences ("stash houses") that the group used for storing drugs close by and for processing and packaging drugs for resale. Law enforcement installed covert cameras in hallways to observe who was using these stash houses.

Through hallway surveillance and physical surveillance capturing hand to hand drug sale transactions on the sidewalk, law enforcement identified targets for further investigation. Law

enforcement conducted extensive physical surveillance of the members of the conspiracy selling controlled substances in the area of 7th Street and O Street, NW.

Law enforcement began executing controlled purchases of both crack cocaine and fentanyl from members of this drug trafficking group. These purchases were recorded and monitored.

The quantities of crack cocaine purchased by law enforcement ranged from one gram to over 28 grams at a time. The members of this group, in total, sold law enforcement approximately 158 grams of cocaine base. The quantities of fentanyl purchased by law enforcement from members of this drug trafficking group ranged from less than one gram up to 65 grams at a time. The charged members of this group, in total, sold law enforcement approximately 470 grams of fentanyl.

During the course of the conspiracy, Defendant Brown visited the 1221 M Street stash house on a regular basis and was present on a regular basis while the group was processing controlled substances. Defendant Brown also sold controlled substances with other members of the conspiracy on various occasions. Text messages recovered from Defendant Brown's phone demonstrate that he was selling fentanyl and cocaine base and using other members of the conspiracy to consummate transactions.

For example, On March 14, 2022, an unidentified individual ("UI") wrote to Defendant Brown "60 for down and I got 10 for up so 70 altogether," referring to fentanyl as down and crack cocaine as up. Defendant Brown responded, "ok got u." On March 15, 2022, Defendant Brown asked a separate UI, "Wat u need." The UI responded, "Can u look out with 10 down," referring to fentanyl. After discussing logistics, Defendant Brown responded "ok. Billy coming," referring to another co-conspirator, who was the leaseholder for the 1221 M Street

stash house who often transported drugs from drug traffickers in his apartment, to drug users/ buyers on the street in front of his apartment building. Additional text messages were recovered from Defendant Brown's phone discussing similar transactions with narcotics customers.

Through this investigation, law enforcement determined that the group was working together to control the drug trafficking activity in their territory. The Defendant knowingly and intentionally agreed with the members of this conspiracy to participate in a conspiracy to distribute various narcotics—including cocaine base.

The Defendant's role in the conspiracy included the distribution and the possession with the intent to distribute cocaine base and the Defendant agrees that it was reasonably foreseeable to him that at least 16.8 grams but less than 22.4 grams of cocaine base would be distributed by members of the conspiracy, which is attributable to him as a member of the conspiracy.

## Count Two

On July 31, 2021, at approximately 11:20 p.m., Defendant Brown traveled to the area of 7th and O Street, NW, with a loaded firearm. An unidentified male ("UM") in a grey Pontiac followed the Defendant to this location and parked nearby. The Defendant parked his automobile on O Street, NW, exited his car, and walked across the street to greet other associates, some of whom were members of the drug trafficking conspiracy described above. As the Defendant approached the group on the corner of 7th and O, the UM approached the group from the other direction with a firearm in his hand. As the UM came closer to the group, the Defendant pulled a firearm from his waistband and began shooting at the UM. The UM instantly began returning fire with a firearm that he brought to the scene.

The group standing on the corner scattered as the Defendant and the UM continued to shoot at each other while fleeing in opposite directions and taking cover behind trees and cars.

As the shooting continued, the occupants of a white automobile parked near the Defendant's car, exited their automobile and also began shooting in the direction of the UM as the UM fled. In all, at least 25 shell casings were recovered from the area.

Kervin Sanchez ("Sanchez") was part of the group standing on the corner of 7th and O Street, NW as the Defendant approached. Sanchez fled in the opposite direction from Defendant Brown, closer toward the flight path of the UM. Sanchez was struck by a bullet while fleeing the scene. He died of the gunshot after being transported to the hospital.

Defendant agrees that but for his actions of pulling a loaded firearm from his waistband and beginning to shoot at the UM that evening, the remainder of this urban gunbattle would not have unfolded and Sanchez's death would not have occurred. Defendant further agrees that in doing so, he acted with a conscious disregard of an extreme risk of death or serious bodily injury to another person.

_____
Kevin Rosenberg
Assistant United States Attorney

## DEFENDANT'S ACCEPTANCE

I have read the foregoing Statement of Offense, and I have discussed this proffer fully with my attorney, Maria Jacob, Esquire. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 6-17-24

_____
Jonathan Brown
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

7

I have read every page constituting the government's proffer of evidence related to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 6-17-24

_____
Maria Jacob, Esquire
Attorney for Defendant